UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )    Crim. No. 04-10092-RWZ
                            )
    v.                      )
                            )
ARTHUR M. KLOACK,           )
                            )
        Defendant.          )

                GOVERNMENT'S SENTENCING MEMORANDUM

   The United States agrees with the offense level computation as set forth by the Probation Office in the Presentence Report dated July 27, 2005 and recommends a sentence of imprisonment of 21 months.  The government submits the following memorandum for the purpose of addressing the issue of obstruction of justice.

<u>Obstruction of Justice</u>

   In addition to the government's statement of the obstruction, appearing at paragraphs 21-24 of the PSR, the government submits as follows.

   1.  The government relies upon the defendant's sworn trial testimony on May 18 and 20, 2005, and trial exhibits 15 and 16A-D, the defendant's Fleet Bank checks and statements.

   2.  In addition, the government expects to introduce business records of Metropolitan Credit Union and Beneficial National Bank USA.

   Defendant argued at trial that the thousands of dollars deposited to his Fleet Bank account from Edward J. Libby represented, in essence, Libby's repayment of cash advanced by

the defendant to boat captains for the purpose of fronting monies for Libby in the purchase of fish.  On May 18, 2005, the defendant testified under oath that the cash for these payments, "on most occasions," came from his Fleet cash reserve account.  5/18/05 Transcript, p.68 lines 3-7; pp. 77-78.  The defendant further testified that, in order to access this cash from his cash reserve account, he could either write a check or make a cash withdrawal via teller.  5/18/05 Transcript, p.78, lines 10-22.

Toward the conclusion of his cross examination on May 18, 2005, the defendant was presented with trial exhibit 15, his canceled checks from the subject account, and trial exhibits 16A-D, his bank statements from the subject account.  A review of this evidence shows that cash withdrawals from the account, as testified to by the defendant, were not made.  Upon being presented with this evidence, the defendant started to testify about other sources of cash - big bonus checks in December and cash in a safety deposit box - that was "available" to him, although ultimately the defendant returned to his story that the cash came from his cash reserve account because that is where "Ed Libby made the checks out."  5/18/05 Transcript, pp.79-80, lines 17-15.

Due to scheduling issues, the defendant had the day of Thursday, 5/19/05, to reflect on his testimony and review his own

records. Trial resumed on Friday, 5/20/05 with the defendant's redirect. Defendant then testified as follows:

Q. Now, sir, what were your sources of funds for cash, if any, in addition to the Fleet account?

. . .

A. Metropolitan Credit Union, Beneficial Finance, First USA, First Bank of New England, First Bank of Boston...

. . .

Q. Now, where did you get the cash from to pay?

. . .

A. The boats – you usually knew when the boat was coming, depending, coming in. They would either page me to let me know when they were coming in. So I could be on my way home and receive a page with the boat's number, because you really can't contact the boats when they're out because there's no antennas. You can't make a phone call. The only other way is by radio. Sometimes I would talk to them by a boat that was stationed by the fish pier, by radio, trying to get an idea when they were coming, maybe even encouraging them to come because pricing was good and I needed the fish.

   So sometimes I could be driving home. I could be on my way home and I would get a page, and I could see the boat's number. So I could call the boat. He said he was coming. If I was in Revere, because I see my mother, there was a bank down the street, Metropolitan. I could access cash right there for my cash advance so I could have money on me. Makes it easy for the next day.

. . .

Q. ... What were your sources, cash sources, sir?

A. Well, I had my own personal cash. I had a line of equity that I had at my house that I could use at any time. That was right where I live. Metropolitan, Beneficial, First New England, Bank of Boston, Fleet ATM. I could go right to the ATM if I needed.

. . .

Q. Do any of the checks that are in Exhibit 15, sir, show any payments back to these sources from which you took cash?

A.   Yes, they do.

Q.   Which such entities are on those checks?

A.   Metropolitan, Beneficial, Fleet, Bank of Boston.

Q.  Now, in each instance, is each such check that's made out to Metropolitan or Beneficial or Fleet of BankBoston – are all of those simply payments back to the banks that advanced you cash"

A.  Some of them are real distinct.  They're, like, round numbers.  Some of them could be combinations.

Q.  What would they be combinations of it they were combinations?

A.   If I had charged something if I had something charged on it, there might have been a $1,200 charge, but there might be an advance of, like, 5,000 or 3,000 or 2,000 or whatever was needed at the time.

5/20/05 Transcript, pp. 4-9 - 4-13.

Defendant's bank records clearly establish that the above statements are false.  There are no Fleet ATM withdrawals during the subject period.  The three Fleet checks written to cash are signed by Patricia Kloack, not the defendant, and are for insubstantial dollars - not the thousands of dollars identified as owing to the boat captains (and as "reimbursed" by Ed Libby).

Records produced by Metropolitan and Beneficial are equally damning.  The records of Metropolitan, the credit union near the home of the defendant's mother, show: 1) no cash advances to the defendant and 2) checks to Metropolitan from Trial Exhibit 15 for 1998, 1999, and 2000 as payments to the defendant's Metropolitan credit card for personal expenses, exclusively.

For example, for 1998:

Check no. 4707, 2/4/98, $7,776.22 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 2/15/98, representing payment for substantial charges at a jewelry store, clothing stores, sporting goods stores, and other personal expenses.  No cash advances.

Check no. 4797, 3/7/98, $945.07 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 3/15/98, representing payment for charges at ski areas in New Hampshire, a restaurant, a nail salon, a pharmacy, clothing stores, a pet store, and other personal expenses.  No cash advances.

Check no. 4829, 4/2/98, $1000.900 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 4/15/98. All personal charges; no cash advances.

Check no. 4853, 5/2/98, $2206.68 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 5/15/98, representing payment in principal part for resort charges in Puerto Rico, other personal and restaurant expenses charged in Puerto Rico, a kennel in Boxford, other personal charges.  No cash advances.

Check no. 4896, 6/8/98, $3700.00 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 7/15/98 representing payment for all personal charges including the jewelry store, the pet store, a tire store, a grocery store, clothing stores.  No cash advances.

Check no. 4946, 7/10/98, $4,000.00 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 7/15/98 representing payment for all personal charges including charges in New Hampshire, clothing, nails.  No cash advances.

Check no. 4968, 8/9/98, $2728.55 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 9/15/98 representing payment for all personal charges including a pool supply store, restaurants in New Hampshire and Massachusetts, a nursery, and other personal charges.  No cash advances.

Check no. 5037, 10/8/98, $7000.00 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 10/15/98 representing payment for all personal charges including a decorating store and airline.  No cash advances.

Check no. 5074, 11/6/98, $1126.82 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 11/15/98 representing payment for all personal charges including hotels, travel and purchases in Louisiana.  No cash advances.

Check no. 5115, 12/5/98, $4445.54 (Trial exhibit 15) appears as a payment on the Metropolitan statement that closed on 12/15/98 representing payment for all personal charges including a lighting store, jewelry, clothing, fitness, electronics.  No cash advances.

   The same exercise for 1999 and 2000 produces the same result.

Likewise, for Beneficial, for the statements it was able to produce:

Check no. 4744, 1/5/98, $1327.80 (Trial exhibit 15) appears as a payment on the Beneficial statement that closed on 1/23/98 representing payment to BJ's Wholesale.

Check no. 4770, 2/9/98, $1744.52 (Trial exhibit 15) appears as a payment on the Beneficial statement that closed on 2/23/98 representing payment to BJ's Wholesale.

Defendant cannot dismiss his false testimony as immaterial - it went to the very heart of what he was trying to establish as to the significance of the Libby payments.  Nor can he claim that, given the court's subsequent ruling as to all of that evidence, that his false testimony lacked materiality as materiality is measured at the time the false statement was made. See United States v. Lee, 359 F.3d 412, 416 (6th Cir. 2004). Given the day that he had to review his records, with his counsel, ("He has looked at [Exhibit 15], your Honor, both overnight and in my office, along with Exhibit 16."  5/20/05 Transcript, p. 4-8), his testimony can hardly be taken as confused or mistaken.

The evidence establishes that an enhancement for obstruction of justice is appropriate in this case.

Dated: August 3, 2005                         By its attorney,

                                                      MICHAEL J. SULLIVAN
                                                    United States Attorney


                                      By:  /s/ Lori J. Holik
                                            Lori J. Holik
                                              Assistant U.S. Attorney


                          CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the above to be served by causing same to be electronically filed with the court and by facsimile transmission.

                                              /s/ Lori J. Holik
                                              Assistant U.S. Attorney